**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ajilon Professional Staffing, LLC, a Delaware company,<br><br>        Plaintiff,<br><br>vs.<br><br>Shad and Jane Doe Griffin; and The Lucas Group, a limited liability company,<br><br>        Defendants. | No. CV-09-561-PHX-DGC<br><br>**TEMPORARY RESTRAINING ORDER** |

Plaintiff Ajilon Professional Staffing, LLC ("Ajilon") provides staffing services to businesses seeking financial professionals for part-time and permanent placements. In January 2009, Shad Griffin left his position as an executive recruiter for Ajilon and immediately began working as a recruiter for Lucas Associates, Inc. ("Lucas"), one of Ajilon's competitors. Ajilon filed a complaint against Griffin and Lucas on March 20, 2009.

Following a hearing on March 24, 2009 (Dkt. #18), the Court entered a stipulated temporary restraining order that essentially prohibits Griffin from breaching confidentiality and non-solicitation provisions in his employment agreement with Ajilon. Dkt. #17; *see* Dkt. #13 at 4-5. On April 7, 2009, the Court held a hearing to address whether the temporary restraining order should be extended to include the non-compete provision in the agreement. Dkt. #24. On the basis of that hearing, and having considered the parties' briefs (Dkt. ##22-

1   23), the Court concludes that the temporary restraining order should include most of the
2   restrictions contained in the non-compete provision.

3   To obtain a temporary restraining order, a plaintiff must show "that he is likely
4   to succeed on the merits, that he is likely to suffer irreparable harm in the absence
5   of preliminary relief, that the balance of equities tips in his favor, and that an injunction
6   is in the public interest." *Winter v. NRDC*, --- U.S. ---, 129 S. Ct. 365, 374 (2008); *see*
7   *Am. Trucking Ass'n, Inc. v. City of L.A.*, --- F.3d ---, 2009 WL 723993, at *4 (9th Cir.
8   Mar. 20, 2009). The Court will address each of these requirements.

9   **I.    Success on the Merits.**

10  The non-compete provision in Griffin's employment agreement provides, in pertinent
11  part:

12  For a period of one year after the termination of this Agreement, Employee
    will not, within a radius of fifty (50) miles from the present place of business
13  of the Employer, . . . directly or indirectly own, manage, operate, control, be
    employed by, participate in, or be connected in any manner with the
14  ownership, management, operation or control of any business similar to the
    type of business conducted by Employer.
15

16  Dkt. #13 ¶ 11. The provision then defines a "similar" business. *Id.* Ajilon argues that the
17  work Griffin performs for Lucas constitutes a clear breach of the non-compete provision.
18  Dkt. ##3, 23. Defendants concede that Lucas's business is "similar" within the meaning of
19  the agreement, but contend that the provision is unreasonable and unenforceable as a matter
20  of law. Dkt. #22.

21  Griffin's employment agreement is governed by New Jersey law. *See* Dkt. #13 ¶ 17.
22  New Jersey courts "have consistently utilized a reasonableness test to determine the
23  enforceability of restrictive covenants." *Cmty. Hosp. Group, Inc. v. More*, 869 A.2d 884,
24  895 (N.J. 2005). The determination of whether a non-compete provision is reasonable
25  involves a three-part inquiry: (1) whether the provision protects legitimate business interests,
26  (2) whether it would cause undue hardship, and (3) whether enforcement of the provision
27  would be consistent with public policy. *See id.* at 897; *see also Solari Indus., Inc. v. Malady*,
28  264 A.2d 53 (N.J. 1970); *Whitmyer Bros., Inc. v. Doyle*, 274 A.2d 577 (1971); *Karlin v.*

*Weinberg*, 390 A.2d 1161 (N.J. 1978).  The Court will address each part of the New Jersey test.

### A.     Legitimate Interests.

As part of the first inquiry – whether the provision protects legitimate business interests – New Jersey courts recognize three possible interests:  the protection of confidential information, the protection of clients and client referral sources, and the protection of an investment in an employee.  *See Cmty. Hosp.*, 869 A.2d at 897.  The non-compete provision in this case protects the second and third categories of legitimate business interests.  First, it appears that Ajilon will be able to show that Griffin's competition in the Phoenix area will draw away existing and potential Ajilon clients, even if Griffin undertakes no effort to actively solicit them.  This likelihood is created by the skills, reputation, and visibility Griffin developed in the business during his twelve years at Ajilon, and by efforts he made before this litigation to advertise his departure from Ajilon and his affiliation with Lucas.  Second, this is not a case where Griffin simply brought his "tools of the trade" to Ajilon and took them when he left.  *Cf. Coskey's TV & Radio Sales and Service, Inc.*, 602 A.2d 789, 795 (N.J. Super. Ct. App. Div. 1992).  Griffin's work for Ajilon over the course of twelve years has apparently established his reputation in the Phoenix community as a recruiter for financial professionals.  This investment by Ajilon – this training and development of Griffin as a finance professional recruiter – would be used to the detriment of Ajilon if Griffin were permitted actively to compete against Ajilon in the Phoenix marketplace.  *See id.*  These legitimate interests are not adequately protected merely by preventing the misuse of confidential information or the direct solicitation of Ajilon clients.  It appears likely that Ajilon will be able to show that Griffin's competition in the Phoenix area will unfairly draw away existing and future clients to Ajilon's detriment.

Once a legitimate interest has been established, New Jersey cases consider three additional aspects of the non-compete provision: "its duration, the geographic limits, and the scope of activities prohibited."  *Id.*  The Court finds that the one-year and 50-mile limitations are "no broader than necessary to protect [Ajilon's] interests."  *Id.*  The Court further finds

1  that it is reasonable to limit Griffin from competing against Ajilon in the business of
2  recruiting in the financial services field. This limitation is somewhat narrower than the terms
3  of the actual provision, which would limit Griffin from working for Lucas in any capacity,
4  but New Jersey courts have made clear that a restrictive covenant is "unenforceable if it
5  restricts the employee from engaging in activities not in competition with those of his former
6  employer." *Karlin*, 390 A.2d at 1169.

7  Defendants contend that a court cannot "blue pencil" the scope of activities limitation.
8  Dkt. #22 at 10 n.10. The cases Defendants rely on contain no such prohibition, but simply
9  state that courts may change the geographical or time limits of a covenant so as to render it
10 reasonable. *See id.* (citations omitted). Other cases make clear, however, that a restrictive
11 covenant may be "given complete or partial enforcement to the extent reasonable under the
12 circumstances." *Cmty. Hosp.*, 869 A.2d at 897 (citing *Whitmyer*, 274 A.2d at 580); *see Cost*
13 *Reduction Solutions v. Durkin Group, LLC*, 2008 WL 3905679, at *3 (N.J. Super. Ct. App.
14 Div. Aug. 22, 2008). This includes limiting the covenant's "application concerning its
15 geographical area, its period of enforceability, *and its scope of activity*." *Coskey's*, 602 A.2d
16 at 793 (emphasis added); *see Kadi v. Massotto*, No. C-101-07, 2008 WL 4830951, at *10
17 (N.J. Super. Ct. App. Div. Nov. 10, 2008).

18    **B.    Undue Hardship.**

19 Once it is determined that the non-compete provision protects a legitimate interest and
20 that the time, geographical limit, and scope of the provision can reasonably be enforced,
21 New Jersey courts consider whether enforcement would impose undue hardship on the
22 employee. *See Cmty. Hosp.*, 869 A.2d at 897. The reason for the termination of the parties'
23 relationship matters. *See id.* Where the application of the non-compete provision "results
24 from the desire of an employee to end his relationship with his employer rather than from any
25 wrongdoing by the employer, a court should be hesitant to find undue hardship on the
26 employee, he in effect having brought that hardship on himself." *Karlin*, 390 A.2d at 423-24.
27 Because Griffin knowingly left Ajilon (as opposed to being fired), and actively
28 solicited Ajilon clients, he cannot be heard to complain about the hardship of enforcing the

non-compete provision. It appears likely that Ajilon will be able to satisfy the second prong by demonstrating that enforcement of the provision will not impose undue hardship on Griffin. *See Cmty. Hosp.*, 869 A.2d at 898; *see also Karlin*, 390 A.2d at 424 ("Ordinarily a showing of personal hardship, without more, will not amount to an 'undue hardship' such as would prevent enforcement of the covenant."); *Sunder v. Madalapu*, No. ATL-C-171-00, 2003 WL 23484589, at *5 (N.J. Super. Ct. June 16, 2003) (same).

### C. Public Interest.

"The final prong of the test is that enforcement of the restriction should not cause harm to the public interest." *Cmty. Hosp.*, 869 A.2d at 898 (citing *Karlin*, 390 A.2d at 424). Defendants have identified no public policy that would be violated by enforcement of Griffin's non-compete provision. *See* Dkt. #22.

### D. Success on the Merits Summary.

Because it appears that the non-compete provision in Griffin's employment agreement protects a legitimate interest of Ajilon, can reasonably be enforced as to time, area, and scope, imposes no undue hardship on Griffin, and is not injurious to the public interest, the Court concludes that Ajilon likely will succeed on its breach of contract claim.

## II. Irreparable Harm.

It is "well-settled that injury to or destruction of a business constitutes irreparable harm for which preliminary and permanent injunctive relief may be appropriate." *U.S. Foodservice, Inc. v. Raad*, 2006 WL 1029653, at *7 (N.J. Super. Ct. Ch. Div. Apr. 12, 2006) (citing *A. Hollander & Son, Inc. v. Imperial Fur Blending Corp.*, 66 A.2d 319, 326 (N.J. 1949)). Indeed, the loss of good will may "constitute irreparable harm, given the difficulties in attempting to quantify future losses." *Global Transp. Logistics, Inc. v. DOV Transp.*, No. BER-C-79-05, 2005 WL 1017602, at *3 (N.J. Super. Ct. Ch. Div. Apr. 5, 2005). Griffin's direct and local competition with Ajilon presents a likelihood of irreparable harm. Although the drawing away of a single client might result in quantifiable damages, the effect of Griffin's local competition on existing and potential future clients of Ajilon cannot readily be quantified.

1 **III.   Balance of Equities.**

2 　　The Court finds that the balance of equities tips in favor of Ajilon.  Griffin signed the
3 non-competition provision and cannot now complain of significant hardship given his
4 voluntary departure from and competition with Ajilon.  Ajilon, on the other hand, will
5 experience hardship in the form of irreparable injury if Griffin's breach of the non-compete
6 provision is not enjoined.

7 **IV.   Public Interest.**

8 　　The final element of the injunctive relief test requires consideration of the public
9 interest.   As explained above, Defendants have identified no public policy that would be
10 violated by enforcement of the non-compete provision.  The public interest generally favors
11 full and fair competition, but if Ajilon is successful on the merits and shows that Griffin
12 wilfully breached the non-compete provision, "then the public interest would favor
13 enforcement of the [provision] and restraint of [Griffin] from unfair competition[.]" *Mercury*
14 *Cos., Inc. v. First Am. Corp.*, No. 08-cv-00911-WYD-CBS, 2008 WL 4861950, at *9 (D.
15 Colo. Nov. 10, 2008); *see Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140,
16 1149-50 (D. Kan. 2007) (there is "a public interest in upholding enforceable contracts" and
17 "the public interest is served where unfair competition is restrained").

18 **V.   Conclusion.**

19 　　Ajilon has satisfied the four-part test for injunctive relief:  Ajilon is likely to succeed
20 on its breach of contract claim, Ajilon is likely to suffer irreparable harm if Griffin's direct
21 and local competition is not enjoined, the balance of equities tips in Ajilon's favor, and
22 injunctive relief is in the public interest.  The Court concludes that the existing temporary
23 restraining order (Dkt. #17) should be extended to include Griffin's direct or indirect
24 recruiting or managing of recruiters in the financial services profession.

25 　　A preliminary injunction hearing is set for May 26, 2009, at 9:00 a.m.  As agreed to
26 by Defendants at the April 7, 2009 hearing, the temporary restraining order shall remain in
27 effect until the Court issues a decision following the preliminary injunction hearing.  The
28 parties may engage in discovery to prepare for the preliminary injunction hearing.

**IT IS ORDERED:**

1. Defendant Shad Griffin shall not disclose any Ajilon confidential information (within the meaning of his employment agreement dated August 26, 1996) to Defendant Lucas Associates, Inc., any employee of Lucas Associates, Inc., or any other person not currently employed by Plaintiff Ajilon Professional Staffing, LLC.

2. Defendant Shad Griffin shall not knowingly solicit any Ajilon employee or any Ajilon customer or applicant with whom he had contact on Ajilon's behalf in the year prior to his departure from Ajilon.

3. Defendant Shad Griffin shall not directly or indirectly recruit or manage recruiters in the financial services profession within a 50-mile radius of Plaintiff Ajilon Professional Staffing, LLC's Phoenix office.

4. This temporary restraining order shall remain in effect until the conclusion of the preliminary injunction hearing on May 26, 2009.

5. No financial security will be required for the restraining order.

6. A preliminary injunction hearing is set for May 26, 2009 at 9:00 a.m.

7. The parties may engage in discovery needed to prepare for the preliminary injunction hearing.

DATED this 10th day of April, 2009.

_David G. Campbell_
David G. Campbell
United States District Judge